**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| Melissa Footlick; Robin Simkins; Erin Clark; Toby Adamson; Jay Rudman; and Griffin Caprio | |
| Plaintiffs, | Case No. 1:22-CV-6152 |
| v. | Judge John Robert Blakey |
| Topstep LLC, Topstep Holdings; TopstepTrader LLC, TopstepPeople, Inc.; Patak Holdings, Inc.; and Michael Patak, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Melissa Footlick, Robin Simkins, Erin Clark, Toby Adamson, Jay Rudman, and Griffin Caprio bring various claims against Defendants Topstep LLC, Topstep Holdings LLC, TopstepTrader LLC, TopstepPeople Inc., Patak Holdings Inc., and Michael Patak arising from the issuance and valuation of certain incentive units to former employees and advisors of the Defendants. Plaintiffs assert eleven claims against Defendants, [18]; Defendants move to dismiss seven of those claims, in whole or in part, including: Counts V and VI (breach of contract); Count VII (breach of fiduciary duty); Count VIII (piercing the corporate veil); Count IX (negligent misrepresentation); Count X (fraud); and Count XI (Illinois Consumer Fraud and Deceptive Business Practices Act). [31]. As explained below, this Court grants in part, and denies in part, Defendants' motion.

## I.    Background[1]

Defendant Michael Patak founded Patak Trading Partners in December 2009.
[18] ¶ 47.  In 2010, Patak hired Plaintiff Footlick as its Recruitment Manager.  *Id.* ¶
48.  Together, Patak and Footlick founded Defendant TopstepTrader LLC on July 12,
2012.  *Id.* ¶ 49.  In 2013, Patak offered Footlick Class B units in TopstepTrader as
compensation for her outstanding performance.  *Id.* ¶ 50.  On October 1, 2016, Patak
and Footlick, entered into an Amended and Restated Operating Agreement for
TopstepTrader LLC (the "2016 Operating Agreement"), which outlined the company's
repurchase rights for Class B units.  *Id.* ¶ 51.

Defendant Topstep Holdings LLC is the manager of TopstepTrader LLC and
Topstep LLC.  Patak is the sole owner and manager of Topstep Holdings LLC.
Together, the Topstep entities[2] comprise a financial technology firm that provides
training and resources to customers to help them become familiar with day-trading
futures and foreign exchange contracts.  *Id.* ¶¶ 41–42.  After passing an initial
evaluation, customers earn a funded trading account, which they can use to trade
future contracts using Topstep's capital.  *Id.* ¶¶ 43–44.

---

[1] For purposes of deciding the motion to dismiss, the Court takes as true the allegations presented in Plaintiff's first amended complaint, [18].

[2] In footnote 1 of their complaint, Plaintiffs state that, because discovery is needed to clarify the opaque structure of Topstep LLC, Plaintiffs use the term "Topstep" to refer to "Topstep LLC or other related and affiliated individuals and entities." [18] at 1.  To the extent this footnote refers to individuals or entities not otherwise named in the complaint, this type of non-specific pleading is contrary to Rule 4 and Rule 8.  To the extent this footnote refers to individuals or entities named in the complaint within the Topstep structure, this type of group pleading is contrary to Rule 8. *See Brooks v. Ross*, 578 F.3d 574, 580−81 (7th Cir. 2009); *see also Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (noting that the purpose of Rule 8 is to give defendants fair notice of the claims against them and the grounds supporting the claims).  Thus, for purposes of this motion, the Court construes each reference to "Topstep" as referring only to Topstep LLC unless otherwise specified.

Plaintiffs are former employees or advisors of TopstepTrader LLC or Topstep LLC. *Id.* ¶¶ 17−22. As part of their compensation, each plaintiff received Incentive Units in TopstepTrader LLC and/or Topstep LLC. *Id.* ¶ 57. The company described these "Incentive Units" as "profit interests," meaning once vested the holder would have a right to a percentage of the company's profits. *Id.* ¶ 58. The Incentive Units have a "profit hurdle" at the time of issuance, above which the interest holder begins to realize a percentage of the company's profit. *Id.*

On January 1, 2020, TopstepTrader LLC and Topstep LLC underwent a restructuring that caused TopstepTrader LLC's profit interests to be contributed to Topstep LLC. *Id.* ¶¶ 60−61. Topstep's Accounting Manager and Director of Finance, Melissa Elaguizy, informed members of the restructuring on March 30, 2020 in an email. *Id.* ¶ 61. According to Ms. Elaguizy, this restructuring would cause no meaningful changes to Incentive Units holders other than tax reporting differences. *Id.* ¶ 62.

The restructuring added debt and liabilities to the company's balance sheet, which decreased the overall value of the Incentive Units. *Id.* ¶ 64. Further, the Amended and Restated Limited Liability Company Agreement (the "2020 Operating Agreement") implemented the following changes, effective January 1, 2020:

- The fair market value of Class B units would be determined solely by the reasonable discretion of the Manager;

- Class B Members' right to independent appraisals and valuations was eliminated;

- Nearly all fiduciary duties were removed; and

- If the company terminated the employment of a Class B unit holder, or if a Class B unit holder withdrew from the company without "good cause," Topstep would have an option to purchase the Class B unit holder's vested units at an aggregated price equal to $1.

*Id.* ¶ 65.

Each Plaintiff separated from Topstep following the execution of the 2020 Operating Agreement. *Id.* ¶ 67. Upon separation from Topstep, each Plaintiff received a Notice of Forfeiture of Unvested Units and Repurchase of Vested Units, which Plaintiffs allege deprived them of the fair market value of their Incentive Units contrary to the distribution method outlined in the Incentive Unit Award Agreements. *Id.* ¶¶ 67–69.

Plaintiffs also allege that Michael Patak, who effectively controls, owns, and operates each of the Topstep entities, disregarded the entities' organizational separateness by:

- Failing to adequately capitalize Topstep;

- Commingling resources between Patak Holdings and Topstep, resulting in inaccurate accounting for both companies;

- Knowingly misrepresenting the fair market value of the companies and Plaintiffs' incentive shares;

- Diverting Topstep resources and membership distributions to fund a separate company of his;

- Informally taking more than $5 million in personal distributions without reciprocal distributions or notice to all members;

- Transferring Topstep funds into accounts for himself and/or his own entities to reflect increased liquidity for obtaining loan approval;

- Using inappropriate Topstep distributions to purchase a home in Aspen, Colorado;

- Misappropriating Topstep funds for his own use; and

- Adding non-employee family members to Topstep's payroll to allow them to receive payments and benefits.

*Id.* ¶¶ 73–81.

## II.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In analyzing a motion to dismiss, the Court will construe the complaint in the light most favorable to the plaintiff, accept all well-pled allegations as true, and

draw all reasonable inferences in a plaintiff's favor. *See Iqbal*, 556 U.S. at 678; *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 584 (7th Cir. 2021).

## III. Analysis

### A. Count VIII – Corporate Veil Piercing

The Court first considers Plaintiffs' claim that it should pierce the corporate veil and disregard the corporate separateness of Defendant Topstep LLC.[3]

Illinois courts[4] follow the internal affairs doctrine for all claims related to improper corporate governance, including claims for piercing the corporate veil. *Keller Systems, Inc. v. Transport Intern. Pool, Inc.*, 172 F.Supp.2d 992, 999 (N.D. Ill. 2001) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 496 (1941)). The internal affairs doctrine states that the law of an entity's state of incorporation or organization governs. *Id.* (citing *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 382−83 (7th Cir. 1990)). Because Topstep LLC is organized under the laws of Delaware, [18] ¶ 11, the Court applies Delaware law to Plaintiffs' veil piercing claim.

---

[3] Plaintiffs do not clarify which entity's corporate veil they seek to pierce. Each of the allegations regarding Patak's improper conduct relates to "Topstep," which the Court infers to mean Topstep LLC. Thus, the Court considers whether to pierce Topstep LLC's corporate veil to determine whether Topstep LLC is a mere alter ego of Patak. To the extent Plaintiffs seek to pierce the corporate veil for an entity other than Topstep LLC or seek to pierce Topstep LLC's corporate veil to reach a defendant other than Patak, the Court finds Plaintiffs have failed to allege facts sufficient to support such a claim.

[4] Because the Court's jurisdiction over these state law claims is based upon supplemental jurisdiction, it applies Illinois' choice of law rules. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988) ("Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law.").

In Delaware, to state a claim for veil piercing, Plaintiffs must allege facts "supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.3d 492, 497 (Del. 2003); *see also Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.3d 1175, 1184 (finding that to pierce its corporate veil, "the corporation must be a sham and exist for no other purpose than as a vehicle for fraud"). But courts "will disregard the corporate form only in the exceptional case." *Eagle Air Transport, Inc. v. National Aerotech Aviation Delaware, Inc.*, 75 F.Supp.3d 883, 896 (N.D. Ill. 2014) (quoting *Winner Acceptance Corp. v. Return on Capital Corp.*, No. 3088-VCP, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008)).

Delaware employs a two-prong test to determine whether to pierce the corporate veil: (1) the parent and the subsidiary operated as a single economic entity; and (2) some overall element of injustice or unfairness is present. *Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, 2009 WL 5184350, at *7 (D. Del. Dec. 23, 2009). To determine whether two entities acted as a single economic entity, courts consider the following factors: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *Manichaean Capital, LLC v. Exela Tech., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021) (quoting *Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015)). Further, there must be some evidence of "fraud or injustice in the

'use of the corporate form.'" *Id.* (quoting *Trevino v. Merscorp, Inc.*, 583 F.Supp.2d 521, 530 (D. Del. 2008)).

Plaintiffs allege that Patak disregarded Topstep LLC's corporate form and unfairly utilized Topstep LLC to enrich himself at the expense of Topstep LLC's investors. First, Plaintiffs allege that Topstep LLC was inadequately capitalized because, despite earning more than $25 million in revenue in 2020 and 2021, Defendants claim it is worth less than a fraction of that amount. [18] ¶ 73. But Plaintiffs also allege that this is not an accurate reflection of Topstep's value and that Topstep's revenue and value "grew vastly" between 2017 and 2020, *id.* ¶ 59. Thus, the fact that Defendants claim Topstep LLC is worth less than a fraction of its revenue is not, on its own, sufficient to establish the company was undercapitalized.

Further, while Plaintiffs state in a conclusory fashion that Patak disregarded the corporate form, the allegations in the complaint indicate otherwise. The complaint acknowledges that Topstep was not a "sham" company or founded for purposes of fraud. Rather, the complaint characterizes Topstep as a successful company with increasing revenue year over year. *Id.* ¶ 59. The allegations also suggest that Topstep had separate accounting, recordkeeping, and tax reporting processes from the other entities. *See, e.g. id.* ¶¶ 62−64. And Plaintiffs make no allegations that Topstep LLC is insolvent or would otherwise be unable to pay a judgment rendered against it.

Plaintiffs do allege that Patak siphoned money from Topstep to fund his other companies and for his personal use. But these allegations, on their own, fail to

establish the "exceptional circumstances," including the requisite injustice or fraud, necessary to pierce the corporate veil. *See Marnavi S.pA. v. Keehan*, 900 F.Supp.2d 377, 393 (D. Del. 2012) (quoting *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260, 270 (D. Del. 1989)).

The Court grants Defendants' motion to dismiss Count VIII.

### B. Count V – Breach of 2020 Operating Agreement

Turning to Plaintiffs' breach of contract claim, Defendants argue that only Defendants Patak Holdings, Inc. and Topstep Holdings, LLC are signatories to the 2020 Operating Agreement. Thus, all remaining defendants—Topstep LLC, TopstepTrader LLC, TopstepPeople LLC, and Michael Patak—must be dismissed from Count V.

The 2020 Operating Agreement contains a choice of law provision stating that Delaware law applies to all "questions concerning the construction, validity and interpretation" of the 2020 Operating Agreement. [32-1] at 34.[5] As a general rule, Illinois courts honor choice of law provisions contained in contracts. *Belleville Toyota, Inc. v. Toyota Motor Sales, USA, Inc.*, 770 N.E.2d 177, 194 (Ill. 2002). Because this cause of action is based upon supplemental jurisdiction, the Court will apply Illinois choice of law rules and honor the contractual provision electing Delaware law. *See Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1520 (7th Cir. 1989).

---

[5] The Court may properly consider the 2020 Operating Agreement as a document extraneous to the complaint because Plaintiffs refer to it throughout the complaint and it is central to their claim. *See Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

Under Delaware law, a limited liability company is bound by the terms of its operating agreement. *See Seaport Village Ltd.*, No. 8841-VCL, 2014 WL 4782817, at *2 (Del. Ch. 2014) (holding that an LLC and its members are bound by the LLC's operating agreement regardless of whether they execute the agreement). Thus, in addition to Defendants Patak Holdings, Inc. and Topstep Holdings, LLC (which are the signatories to the 2020 Operating Agreement), Topstep LLC is also a party bound by the agreement's terms.

Plaintiffs argue that the remaining Defendants are also bound by the 2020 Operating Agreement. First, Plaintiffs argue that the signature pages of the agreement do not identify all members. But it is well-settled that "only parties to a contract are bound by that contract. *Id.* (quoting *Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 343 (Del. Ch. 2003)). Without any allegations as to who else may have signed the 2020 Operating Agreement, Plaintiffs fail to state a claim against unidentified members.

Second, Plaintiffs argue that it is unclear who served as Topstep's manager and that "Patak, and/or various entities owned and controlled by Patak, adopted several amendments to Topstep's Operating Agreement, management and governance without disclosure to the Class B Members." [38] at 5. But general allegations that various other entities may have adopted amendments to the 2020 Operating Agreement, without any evidence that those entities were parties to the agreement, remain insufficient to hold them liable for a breach of contract.

Finally, Plaintiffs' conclusory statement that "Defendants were likely Members, Managers, or Interest Holders of Topstep during the relevant period" is not sufficient to hold them liable for the breach of a contract to which they were not a party.

Thus, the Court dismisses Count V as to Defendants TopstepTrader LLC, TopstepPeople LLC, and Michael Patak.

### B.     Count VI – Breach of the Incentive Unit Award Agreements

Defendants argue that Count VI must be dismissed as to each Defendant that is not a signatory to any Incentive Unit Award Agreement. The complaint alleges that either Topstep LLC or TopstepTrader LLC signed each Incentive Unit Award Agreement. *See* [18] ¶¶ 86, 89, 105, 123, 139, 151−54, 165−66. Thus, Plaintiffs have stated a claim for breach of the Incentive Unit Award Agreements against Topstep LLC and TopstepTrader LLC.

But, as discussed above, Plaintiffs have failed to adequately plead breach of contract as to the Defendants who are not parties to the Incentive Unit Award Agreements.

The Court dismisses Count VI as to Defendants Topstep Holdings LLC, TopstepPeople, Inc., Patak Holdings, Inc., and Michael Patak.

### C.     Count VII – Breach of Fiduciary Duty

Plaintiffs allege a breach of fiduciary duty based upon the duties imposed under both the 2016 Operating Agreement and the 2020 Operating Agreement.

The 2016 Operating Agreement is dated October 1, 2016 and governs the parties' rights, duties and obligations with respect to TopstepTrader LLC, an Illinois company. [32-2] at 4. The 2020 Operating Agreement is dated January 1, 2020 and governs the parties' rights, duties and obligations with respect to Topstep LLC. [32-1] at 5. Topstep LLC is a Delaware company, and the 2020 Operating Agreement superseded the original 2019 Operating Agreement, which is dated November 1, 2019.[6] *Id.*

Because the 2016 Operating Agreement governs an Illinois company, the Court applies Illinois law to any claims for breach of fiduciary duty related to TopstepTrader LLC. Because the 2020 Agreement governs a Delaware company, the Court applies Delaware law to any claims for breach of fiduciary duty related to Topstep LLC.[7]

### 1. *2016 Operating Agreement*

Plaintiffs allege that Defendant Patak Holdings (as Manager of TopstepTrader LLC), and Defendant Michael Patak (as an officer of TopstepTrader LLC), breached their fiduciary duties to Plaintiffs, as members of the LLC.

The Illinois Limited Liability Company Act provides that a manager of a member-managed company owes its members a duty of care and loyalty. 805 ILCS § 180/15−3(a). The 2016 Operating Agreement further provides that the "Manager shall discharge the Manager's duties to the Company and the other Members in good

---

[6] As discussed above, the Court may properly consider the 2016 and the 2020 Operating Agreements as documents extraneous to the complaint because Plaintiffs refer to them throughout the complaint, and they are central to Plaintiffs' claim. *See Venture Assoc.*, 987 F.2d at 431.

[7] Illinois choice of law principles follow the internal affairs doctrine, which applies the substantive law of the state of incorporation or organization to a claim for breach of fiduciary duty. *CDX Liquidating Trust v. Venrock Assoc.*, 640 F.3d 209, 213 (7th Cir. 2011).

faith and with the degree of care that an ordinarily prudent person in a similar position would use under similar circumstances." [32-2] at 23. Thus, under the 2016 Operating Agreement and the Illinois LLC Act, TopstepTrader's Manager, Patak Holdings, owed Plaintiffs a duty of care, loyalty, and good faith.

Plaintiffs also allege that Michael Patak, as the sole Class A Member and Officer of Topstep LLC, owed Plaintiffs the same duties. Under the Illinois LLC Act, a member may owe the other members the same fiduciary duties as the manager if he "exercises some or all of the authority of a manager in the conduct of the company's business." 805 ILCS § 180/15−3(g)(3).

Section 6.06 of the Operating Agreement states that "no Member other than a Manager shall take part in the day-to-day management, operation or control of the business" except "as otherwise stated in this Agreement or required under the Act." [32-2] at 22. Section 6.09(a) explicitly states that "Patak shall serve as the CEO of the Company" and that as CEO, he "shall have general supervision over the day-to-day business, operations and affairs of the Company." *Id.* at 23.

As Defendants' own authority acknowledges, the Court is "bound to the contents of the operating agreement" when interpreting section 15−3(g). *800 S. Wells Commercial LLC v. Cadden*, 103 N.E.2d 875, 891 (Ill. App. Ct. 2018). In *Cadden*, the court only found the defendant owed no fiduciary duties because he "was explicitly not granted any managerial authority under that operating agreement." *Id.* In contrast, the 2016 Operating Agreement explicitly grants Patak managerial authority. Thus, Patak falls squarely within the exception in Section 15−3(g) and

owed the same fiduciary duties to the members of the LLC as the Manager, Patak Holdings.

Defendants further argue that neither Patak, as CEO, nor Patak Holdings, as Manager should be held liable for a breach of fiduciary duty because Plaintiffs have failed to address the business judgment rule. In Illinois, the business judgment rule provides that "absent evidence of bad faith, fraud, illegality, or gross overreaching, courts are not at liberty to interfere with the exercise of business judgment by corporate directors." *Palm v. 2800 Lake Shore Drive Condo. Ass'n*, 10 N.E.3d 307, 334 (Ill. App. Ct. 2014).

Based upon the complaint, however, Defendants cannot show an absence of alleged instances of fraud, illegality, conflict of interest, or bad faith. In fact, Plaintiffs have alleged that Defendants Patak and Patak Holdings intentionally misrepresented information to the other members about their ownership interests; stripped members of certain protections and rights without notice or disclosure to the members; made self-interested distributions; intentionally decreased the value of other members' shares; and misappropriated business funds for Patak's personal use. [18] ¶ 215. These allegations are sufficient to demonstrate reckless or intentional misconduct in violation of the duty of care, 805 ILCS § 180/15−3(c), and self-dealing and misappropriation of company funds in violation of the duty of loyalty, 805 ILCS § 15−3(b).

### 2.    *2020 Operating Agreement*

Unlike the 2016 Operating Agreement, the 2020 Operating Agreement eliminates the Manager's fiduciary duties to the company's members. Under Delaware law, a limited liability company agreement may eliminate a member or manager's fiduciary duties as long as it does not eliminate the implied contractual covenant of good faith and fair dealing. 6 Del. C. § 18-1101(e). Section 6.3(b) of the 2020 Operating Agreement states "the Manager shall have no duties (including fiduciary duties) to the Company or the Interest Holders other than those duties expressly described herein and the Manager's implied contractual covenant of good faith and fair dealing." [32-1] at 19.

Plaintiffs argue that, based upon this provision, Defendants may be liable for a breach of the fiduciary duty of good faith and fair dealing. But Plaintiffs conflate the implied covenant of good faith and fair dealing with a fiduciary duty under Delaware law. The implied covenant of good faith and fair dealing "is a creature of contract, distinct from the fiduciary duties that the plaintiff asserts here." *Bamford v. Penfold, L.P.*, 2022 WL 2278867, at *33 n.18 (Del. Ch. June 24, 2022) (quoting *Wood v. Baum*, 953 A.2d 136, 143 (Del. 2008)).

Plaintiffs do not allege a violation of the implied contractual covenant of good faith and fair dealing, nor could they do so based upon the allegations contained in the complaint. Establishing such a breach is "notoriously difficult," *id.*, and requires a showing that the party engaged in "arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the

bargain." *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010). While Plaintiffs disagree with the decisions made by Defendants and allege that provisions in the 2020 Operating Agreement were unfair, Plaintiffs fail to allege the requisite elements of a violation of an implied contractual covenant of good faith and fair dealing. *See id.* (finding courts will not "reform a contract because enforcement of the contract as written would raise moral questions").

Thus, the Court denies Defendants' motion to dismiss Count VII as to claims against Patak Holdings and Michael Patak arising under the 2016 Operating Agreement and grants Defendants' motion as to claims against Topstep Holdings and Patak Holdings arising under the 2020 Operating Agreement.

### C. Count IX and X – Negligent Misrepresentation and Fraud

Plaintiffs also bring claims for negligent misrepresentation and fraud, alleging that the March 30, 2020 email to Plaintiffs contained material misstatements regarding the terms of the 2020 Operating Agreement and its impact on Plaintiffs' Interest Units, which induced Plaintiffs to sign the agreement. As previously noted, Delaware law applies to claims arising under the 2020 Operating Agreement. This includes claims based upon misrepresentations made about the contract prior to its signing. *See Janice Doty Unlimited, Inc. v. Stoecker*, 697 F.Supp. 1016, 1020 (N.D. Ill. 1988) (finding choice of law provisions applied to "fraudulent misrepresentations that took place *before* the parties entered into the contract").

Under Delaware law, "sophisticated parties may not reasonably rely upon representations outside of the contract, where the contract…contains a provision

explicitly disclaiming reliance upon such outside representations." *RAA Mgmt., LLC v. Savage Sports Holdings, LLC*, 45 A.3d 107, 118 (Del. 2012).

The 2020 Operating Agreement contains such a provision. Section 3.8(vi) states that "in entering into this transaction, such Interest Holder is not relying upon any information other than that contained in this Agreement and the results of its own independent investigation." [32-1] at 17. Further, subpart (i) of the same section states that the "Interest Holder has knowledge and experience in financial and business matters and is capable of evaluating the merits and risks of an investment in the Company and making an informed investment decision with respect thereto." *Id.*

To circumvent this clear anti-reliance provision, Plaintiffs argue that the provision only applies to a "transaction" involving the Interests; it does not apply to Plaintiffs' decision to sign the 2020 Operating Agreement. [38] at 13. But the provision refers, specifically, to "this transaction," and Plaintiffs have not offered another reasonable definition for that term other than unspecified "offers and transactions of Incentive Units." Plaintiffs' forced interpretation stands contrary to the plain meaning of the phrase "this transaction," which necessarily implies a specific, immediate transaction. *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021) ("When a contract is clear and unambiguous, the court will give effect to the plain meaning of the contract's terms and provisions.").

According to Plaintiffs, Section 3.8(vi) does not apply to Plaintiffs at all because the section only applies to transactions for Interest Units, and the 2020 Operating

Agreement is not effectuating any transactions for Interest Units. Thus, were the Court to adopt Plaintiffs' proposed interpretation, Section 3.8(vi) of the 2020 Operating Agreement would not actually pertain to the parties who signed it. *Id.* ("An interpretation is unreasonable if it produces an absurd result or a result that no reasonable person would have accepted when entering the contract.").

The 2020 Operating Agreement unambiguously disclaims reliance by any Interest Holder "upon any information other than that contained in" the 2020 Operating Agreement "and the results of their own independent investigation" in deciding to enter into the 2020 Operating Agreement. Plaintiffs agreed not to rely on any representations made outside of the 2020 Operation Agreement, and it is unreasonable for Plaintiffs to claim that they justifiably relied upon the March 30, 2020 email in deciding to sign the agreement.

The Court grants Defendants' motion to dismiss as to Counts IX and X.

## D.     Count XI – Illinois Consumer Fraud and Deceptive Business Practices Act

The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (quoting *Robinson v. Toyota Motor Credit Corp*, 775 N.E.2d 951, 960 (Ill. App. Ct. 2002)). To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, a plaintiff must allege: (1) a deceptive or unfair act or practice

by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce. *Id.* Illinois courts have delineated two ways in which a private individual can bring a claim under ICFA: (1) as a consumer; or (2) by meeting the consumer nexus test. *Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 221 (Ill. App. Ct. 2003).

Section 505/1 of ICFA defines consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). As an initial matter, Plaintiffs do not allege in the complaint that they purchased anything from Topstep. Topstep "awarded" or "granted" Plaintiffs their Interest Units. Thus, they are not consumers under the statute.

The consumer nexus test permits individuals and businesses to bring a claim under ICFA if they "allege conduct that involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Id.* (quoting *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33 (Ill. App. Ct. 1989)).

Plaintiffs argue that they satisfy this test because, by artificially lowering the value of Plaintiffs' Interest Units, Defendants have deceived their customers into believing that Topstep's funded entities also have an inflated value. But the complaint contains no allegations that Defendants' alleged practices of inducing

Plaintiffs to sign the 2020 Operating Agreement and improperly valuing Plaintiffs'
Class B shares had any impact on the consumer market generally.

Further, Plaintiffs fail to explain what harm these practices caused to
consumers other than causing them to believe "an inflated value of Topstep's funded
entities." [38] at 15. The complaint contains no allegations that consumers even
knew about this supposedly inflated value or that, if they did, it would cause any
harm to the consumers, who have no interest in the company's value. The deceptive
practices Plaintiffs allege are exclusively directed at the Class B Interest Holders.
Thus, Plaintiffs cannot establish that any allegedly deceptive trade practices
addressed the market generally or otherwise implicated consumer protection
concerns.

The Court grants Defendants' motion to dismiss as to Count XI.

## IV. Conclusion

For the reasons explained above, the Court grants in part and denies in part
Defendants' motion to dismiss, [31]. The Court dismisses Count V through VII in
part and Counts VIII through XI in their entirety. The Court grants Plaintiffs'
request for leave to file a Second Amended Complaint on or before April 16, 2024.
Defendants shall file an answer to the Second Amended Complaint under the rule of
procedure, and the Court will set additional case management dates in a future order.

Dated: March 26, 2024                    Entered:

_____
John Robert Blakey
United States District Judge