**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MELISSA FOOTLICK; ROBIN SIMKINS; ERIN CLARK; TOBY ADAMSON; JAY RUDMAN; AND GRIFFIN CAPRIO, | |
| Plaintiffs, | |
| v. | Case No. 1:22-cv-06152 |
| TOPSTEP LLC; TOPSTEP HOLDINGS LLC, TOPSTEPTRADER LLC, TOPSTEPPEOPLE INC., PATAK HOLDINGS, INC.; and MICHAEL PATAK, *in his individual capacity*, | Judge John Robert Blakey Magistrate Judge Jeffrey Cole |
| Defendants. | |

## SECOND AMENDED COMPLAINT

Plaintiffs Melissa Footlick ("Footlick"), Erin Clark ("Clark"), Toby Adamson ("Adamson"), Jay Rudman ("Rudman"), and Griffin Caprio ("Caprio") (collectively "Plaintiffs"), by and through their attorneys Ian H. Fisher, Gillian G. Lindsay and Michael A. Mayerck of Taft, Stettinius & Hollister LLP, for their Second Amended Complaint against Defendants Topstep LLC ("Topstep"), Topstep Holdings LLC ("Topstep Holdings"), TopstepTrader LLC ("TopstepTrader"), TopstepPeople Inc. ("TopstepPeople"), Patak Holdings, Inc. ("Patak Holdings"), and Michael Patak ("Patak") (collectively "Defendants"), hereby state as follows:

## NATURE OF ACTION

1.      Plaintiffs have suffered injury and damage from Defendants' breach of the 2020 Operating Agreement, Incentive Unit Award Agreements, and violation of fiduciary duties.

2.      Plaintiffs bring this action to recover compensation and damages they are rightfully entitled to, but due to Defendants' negligent and wrongful conduct, never received.

3.      In addition, Topstep discriminated against and denied equal pay to the female

Plaintiffs, *e.g.*, Topstep: (a) failed and refused to obtain a third-party valuation when assigning value to the female Plaintiffs' Incentive Units; (b) assigned purchase prices in an unreasonable and arbitrary manner; (c) assigned values that are lower than similarly situated males—in Ms. Adamson's case $0; (d) provided less favorable payment terms to the female Plaintiffs; (e) subjected a 2019 offer of Incentive Units to the 2020 Operating Agreement's profit hurdle, which increased by 43%; and, (f) denied female Plaintiffs credit for all vested incentive units, in violation of the Equal Pay Act, Title VII of the 1964 Civil Rights Act, the Illinois Equal Pay Act, and Illinois Human Rights Act.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Counts I and II arise under the laws of the United States, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et. seq.*; and the Equal Pay Act, 29 U.S.C. § 621, *et. seq.*

5.      This Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367 on the grounds that the state law claims are so related to the federal claims that they form a part of the same case or controversy.

6.      This Court has personal jurisdiction over Defendants because they reside in, transact business in, otherwise have significant contacts with this District, and a substantial part of the events giving rise to these claims occurred in this District.

7.      Venue is proper in this District as Defendants reside in, transact business in, otherwise have significant contacts with this District, and a substantial part of the events giving rise to these claims occurred in this District.

8.      Footlick, Clark, and Adamson timely filed charges of sex discrimination with the

Equal Employment Opportunity Commission ("EEOC"). Copies of Footlick's, Clark's, and Adamson's Notices of Right to Sue from the EEOC are attached hereto as Exhibit A.

## THE PARTIES

9.      Upon information and belief, Defendant Topstep is a Delaware limited liability company. Topstep's principal place of business is 141 W. Jackson Blvd., Suite 4240, Chicago, IL 60604. Upon information and belief, Defendant Topstep Holdings serves as the manager of Topstep.

10.     Upon information and belief, Defendant Topstep Holdings LLC is an Illinois limited liability company with its principal office at 224 N. Des Plaines St. #350, Chicago, IL 60661. Michael Patak is the sole owner and manager of Topstep Holdings. Topstep Holdings is the sole Class A Member of Topstep.

11.     Upon information and belief, Defendant Michael Patak is the sole owner, manager, and President of Patak Holdings, Inc. and Topstep Holdings. Upon information and belief, Patak resides in Pitkin County, Colorado.

12.     Upon information and belief, Defendant Patak Holdings Inc. was an Illinois corporation with its principal place of business located at 130 S. Jefferson, Suite 200, Chicago, IL 60661. Effective January 1, 2020, Patak Holdings was the sole Manager of TopstepTrader and Topstep. Patak Holdings was voluntarily dissolved in or around Thursday, February 4, 2021. At all relevant times, Michael Patak was the sole owner, Manager, and President of Patak Holdings, Inc.

13.     Upon information and belief, Defendant TopstepTrader LLC is an Illinois limited liability company with a principal office at 224 N. Des Plaines St. #350, Chicago, IL 60661. Topstep Holdings serves as manager of TopstepTrader.

14. Upon information and belief, Defendant TopstepPeople Inc. is a Delaware Corporation and not registered to do business in Illinois.

15. Plaintiff Melissa Footlick was employed by Patak Trading Partners, TopstepTrader, and Topstep from September 20, 2010 to approximately September 3, 2021. Footlick is female and resides in Johnson County, Kansas.

16. Plaintiff Erin Clark was employed by TopstepTrader and Topstep from approximately November 2012 through July 2, 2021. Clark is female and resides in Cook County, Illinois.

17. Plaintiff Toby Adamson was employed by TopstepTrader and Topstep from September 24, 2019 to May 25, 2022. Adamson is female and resides in Cook County, Illinois.

18. Plaintiff Jay Rudman was employed by TopstepTrader and Topstep from approximately 2016 through January 31, 2022. Rudman resides in Cook County, Illinois.

19. Plaintiff Griffin Caprio was an advisor of TopstepTrader and Topstep from December 2015 through February 2022. Caprio resides in Cook County, Illinois.

## INTRODUCTION

20. Plaintiffs are former employees and/or advisors of Topstep. After devoting their time and talent to Topstep, Plaintiffs earned Class B units as a reward, incentive, and compensation ("Incentive Units"). Topstep provided employees with clarification on how to accurately and fully understand the value of their Incentive Units. In 2019, Topstep explained that assuming revenue of $15,000,000, a prospective buyer may purchase Topstep for 4x revenue, so each 1% interest in Topstep equates to $600,000 of value. "Amortized over a 4-year vesting period, that contributes $150,000 annually to your total compensation."

21. On March 30, 2020, Defendants represented to Plaintiffs via email that Topstep

Trader and its related entities were undergoing a restructuring of the companies and ownership, and "[e]ffective January 1, 2020, TopstepTrader's profit interests will be contributed to Topstep LLC." The email states, "As a profit interest holder, you may wonder what this means for you. Essentially, it just means you have ownership over TopstepTrader, and ALL its entities. Other than tax reporting . . . you will see nothing change and it will be 'business as usual.'"

22.     Upon information and belief, from January 1 – December 31, 2020, Topstep's gross revenue exceeded $25,000,000 and EBITDA exceeded $3,700,000 total gross revenue from January 1, 2021 - October 31, 2021, a partial year, exceeded $25,000,000.

23.     In 2021, Plaintiffs Footlick and Clark, both female, left their roles at Topstep for various reasons—*e.g.*, after nine years of service, Topstep laid off Clark.

24.     In November 2021, Topstep attempted to force a redemption of Clark's and Footlick's Incentive Units. Topstep did not obtain an independent or third-party valuation or engage in a formal internal valuation. Instead, Topstep claimed the entire company was worth $5,143,000—a fraction of revenue for a single year. Notably, Patak had recently diverted more than $5,000,000 in distributions to himself.

25.     Moreover, Topstep tried to redeem the women's incentive units via an unsecure four-year promissory note, subordinate to all other Company debt.

26.     Upon information and belief, Topstep previously provided more favorable redemption values and payment terms to male employees; for example in 2018, Topstep made a lump sum cash payment and valued the company at 2x revenue when redeeming the interest of a departing male employee.

27.     Clark and Footlick objected to and rejected the purported redemption and requested documents and records, and an independent appraisal. Topstep refused to provide complete

documents and information, or obtain an evaluation.

28. Around this time, Plaintiffs learned that through the restructuring and various amendments, Defendants engaged in a scheme to strip away Plaintiffs' rights and benefits, and reduce the value of Incentive Units, *e.g.* the restructuring and amendments purportedly:

    a. Provided vested shares could be redeemed for $1, should the employee voluntarily withdraw from the company or be terminated;

    b. Created unfavorable payment terms via "unsecured promissory note . . . junior in right of payment to all other indebtedness of Company, . . . payable in four annual payments on the first, second, third, and fourth anniversaries of the closing;"

    c. Reduced Manager's fiduciary duties;

    d. Eliminated Plaintiffs' rights to independent appraisals; and,

    e. Decreased the value of the Incentive Units by carrying more organizational debt and liabilities.

29. In 2022, Plaintiffs Rudman (male), Caprio (male), and Adamson (female) separated from Topstep.

30. In May 2022, Topstep obtained a third-party valuation.

31. Thereafter, Defendants attempted to redeem Rudman, Caprio, and Adamson's vested Incentive Shares at purchase prices far below fair market value.

32. Defendants claimed the "fair market value" of Adamson's (female) 150,315 vested units was "$0, but in its discretion [was] willing to pay $1.00."

33. In contrast, although Defendants grossly undervalued Rudman and Caprio's interests, Defendants assigned some worth to the men's Incentive Shares, *e.g.*, Defendants claimed the "fair market value" of Caprio's 272,790 vested units was $18,788.

34. Moreover, Defendants did not subject Caprio to the unfavorable 4 year promissory note, instead, Defendants tendered a check for the purported purchase price.

35.     Rudman, Caprio, and Adamson objected to and rejected Topstep's redemptions because the purported purchase prices were grossly undervalued, unreasonable, and not made in good faith.

## GENERAL FACTUAL BACKGROUND

36.     Plaintiffs herein were employed by or retained as advisors to Topstep or its affiliates at various times; none of the Plaintiffs are current employees or advisors.

37.     In exchange for their service to Topstep, Plaintiffs earned Incentive Units via Incentive Unit Award Agreements.

38.     Topstep is a financial technology firm based in Chicago, Illinois.

39.     Topstep provides training and resources to customers that desire to become familiar with day-trading futures and foreign exchange contracts.

40.     Customers who pass Topstep's initial evaluation, known as the Trading Combine, earn a funded trading account.

41.     These customers trade futures contracts in the financial markets using Topstep's capital.

42.     In 2020, Topstep's gross revenue exceeded $25,000,000 and EBITDA exceeded $3,700,000.

43.     Topstep's growth continued. Total gross revenue from January 1, 2021 - October 31, 2021, a partial year, exceeded $25,000,000.

**I.      Company Founding, Ownership, and Organization**

44.     Patak founded Patak Trading Partners in or around December 2009.

45.     In 2010, Patak hired Footlick as Recruitment Manager of Patak Trading Partners.

46.     On or around July 12, 2012, Patak and Footlick created TopstepTrader.

47. In 2013, as compensation for Footlick's outstanding performance, and to incentivize her to stay, Patak offered her Class B units in TopstepTrader.

**A.      The 2016 Operating Agreement**

48. On October 1, 2016, TopstepTrader's members—Footlick and Patak—entered into an Amended and Restated Operating Agreement ("2016 Operating Agreement"). A true and accurate copy of the 2016 Operating Agreement is attached hereto as Exhibit B.

49. Patak appointed Patak Holdings as Manager of TopstepTrader.

50. Section 6.07 of the 2016 Operating Agreement provides that "Each Manager shall discharge the Manager's duties to the Company and other Members in good faith and with that degree of care that an ordinarily prudent person in a similar position would use under similar circumstances."

51. Section 8.07 of the 2016 Operating Agreement provides:

> If any Person who was issued Class B Units ceases to be employed by the Company for any reason at any time, the Company shall have the right, but not the obligation, to purchase all of the Vested Class B Units that were issued to such Person (regardless of whether such Units are still held by the Person or have been Transferred in accordance with this Agreement) on the following terms: (1) for the Fair Market Value of such Class B Units at the time of such termination of employment unless an employee is terminated for cause or quits and goes to work for a direct competitor . . . .

52. The 2016 Operating Agreement defines "Fair Market Value," as "with respect to any property on a given date as determined in good faith by the Manager, the amount a willing buyer would pay a willing seller for such property, where neither the buyer nor the seller is under any compulsion to buy or sell and both are aware of all the material facts with respect to the property."

53. Section 8.04 of the 2016 Operating Agreement provides that a member selling their incentive units may obtain up to three independent appraisals to determine the shares' fair market

value.

**B.    Incentive Units**

54.    Plaintiffs were awarded Incentive Units in TopstepTrader and/or Topstep.

55.    Topstep described the Incentive Units as follows:

[I]n layman's terms, your incentive units are "profit interests" which means once vested, you have certain rights to Topstep's profits. These incentive units are not options. However, similar to an option's strike price, there is a "hurdle" (currently $16M). As of July 2019, Topstep's expected revenues for the year . . . should approximate $15M. Assuming a multiple of 4x revenues, that hypothetically implies a buyer might pay $60M for Topstep. Thus, in this hypothetical example, each 1% interest in Topstep equates to $600,000 of value (not accounting for the profit hurdle). Amortized over a 4-year vesting period, that contributes $150,000 annually to your perceived total compensation. Furthermore, a change in control accelerates the vesting of incentive units, therefore potentially reducing the denominator when calculating per year compensation. Again, the example outlined above is hypothetical, but it is Topstep's current belief that its revenues, and therefore its value, will only continue to grow over time.

56.    Over time, Topstep's revenue and value grew vastly.  For example, Topstep increased the profit hurdle for Class B incentive shares as follows:

a.    2017: $100,000;

b.    2018: $250,000;

c.    2019: $16,000,000;

d.    2020: $28,000,000.

**C.    The 2020 Restructuring and Amended Operating Agreement**

57.    On March 30, 2020, Topstep emailed all members to advise that effective January 1, 2020, TopstepTrader and related entities, would be restructured under Topstep and various subsidiaries.

58.    The correspondence from Melissa Elaguizy, Topstep's former Accounting Manager and Director of Finance provides that:

> [b]y restructuring, we are moving to a more organized business
> structure which provides all members benefits from all entities . . .
> [p]reviously, our Funded Trader entities (TopstepFX and
> TopstepFunded (FKA Patak Trading Partners) were solely owned
> by Michael Patak. However, this restructure moves these entities
> under the umbrella of Topstep LLC. This gives interest holders the
> benefits of having an interest in the company in its entirety, not
> piecemeal.

59.     In the same email, Topstep advised its members "As a profit interest holder, you may wonder what this means for you. Essentially, it just means you have ownership over TopstepTrader, and ALL its entities. Other than tax reporting . . . you will see nothing change and it will be 'business as usual.'"

60.     Topstep's March 30, 2020 email fraudulently misrepresented changes to the Class B Members and Incentive Unit holders.

61.     It was not business as usual, for example, the restructuring saddled Incentive Units with more debt and liabilities on the balance sheet decreasing the overall value of the Incentive Units.

62.     In addition, the following changes were adopted in Topstep's January 1, 2020 Amended and Restated Limited Liability Company Agreement ("2020 Operating Agreement"):

   a.     The fair market value of the Class B units is determined solely by the reasonable discretion of Manager;

   b.     Class B Members' right to independent appraisals and valuations was eliminated;

   c.     Nearly all fiduciary duties were removed; and,

   d.     If the company terminates the employment of a Class B unit holder, or if a Class B unit holder withdraws from the company without "good cause," Topstep has an option to purchase the Class B unit holder's vested units at an aggregate price equal to $1.

63.     A true and accurate copy of the 2020 Operating Agreement is attached hereto as Exhibit C.

64.     Upon information and belief, Patak, and/or various entities owned and controlled by Patak, adopted several amendments to Topstep's Operating Agreement, management, and governance without disclosure to the Class B Members, including but not limited to, removing Patak Holdings as Topstep's Manager and appointing Topstep Holdings.

65.     Each Plaintiff separated from or withdrew from Topstep following entry of the 2020 Operating Agreement and received Notices of Forfeiture of Unvested Units and Repurchase of Vested Units from Topstep.

66.     In each of the Notices of Forfeiture of Unvested Units and Repurchase of Vested Units, Defendants acted in bad faith to deprive Plaintiffs of the fair market value of their Incentive Units.

67.     The valuation of Plaintiffs' vested Class B units in the Notices of Forfeiture of Unvested Units and Repurchase of Vested Units ran contrary to the distribution method used in each of Plaintiffs' Incentive Unit Award Agreements.

68.     Moreover, for the female Plaintiffs, Defendants either assigned their Incentive Units no value, offered less favorable payment terms via unsecured and subordinate four-year promissory note, and/or failed and refused to obtain a third-party valuation for the redemption.

**D.     Patak's Negligent and Selfish Acts**

69.     Patak effectively controls, owns, and operates Topstep, and its affiliated entities, such that separate personalities no longer exist.

70.     Patak commingled resources between Patak Holdings and Topstep, resulting in inaccurate accounting for both companies.

71.     Patak willfully acted in bad faith and knowingly misrepresented the fair market value of the companies and the Plaintiffs' incentive shares.

72.     Patak diverted Topstep resources and membership distributions to fund a separate company he founded and managed, Bluechxp, LLC.

73.     Upon information and belief, Patak informally took more than $5 Million in personal distributions without reciprocal distributions or notice to all Members.

74.     Upon information and belief, Patak transferred Topstep funds into accounts for himself and/or his entities to reflect more liquidity in seeking approval for loans.

75.     Upon information and belief, Patak, and/or one of his affiliated entities, used inappropriate Topstep distributions to purchase a home in Aspen, Colorado.

76.     Upon information and belief, Patak misappropriated Topstep funds for his own use.

77.     Upon information and belief, Patak added non-employee family members to Topstep's payroll, allowing them to receive improper payments and benefits.

**II.     Plaintiffs' Incentive Shares, and Defendants' Attempts to Force Redemptions**

**A.     Melissa Footlick**

78.     Footlick is a founding member of Topstep's leadership team. For more than a decade, Melissa Footlick devoted her time and talents to build Topstep from the ground up.  She was responsible for defining and executing company strategy and vision.

79.     Footlick started working with Patak in 2010 as Recruitment Manager of Patak Trading Partners, until she and Patak formed Topstep Trader in 2012.

80.     Footlick served as Topstep's Director of Operations from 2012 to 2017.

81.     In 2013, as compensation for her outstanding performance, and to incentivize her to stay, Patak offered her 2,193,170 Class B units in TopstepTrader.

82.     On November 1, 2014, Footlick entered into an Incentive Unit Award Agreement with TopstepTrader, whereby she was granted 2,193,170 Class B units.

83. As of November 1, 2014, Footlick's 2,193,170 units were fully vested.

84. In 2017, Footlick was promoted to Chief Operating Officer ("COO") of TopstepTrader.

85. On November 26, 2019, Footlick entered into another Incentive Unit Award Agreement, which granted her a 0.25% profits interest for hitting certain EBITDA and revenue goals in 2019 and 2020, for a total of 1% profits interests, *i.e.,* 595,149 Incentive Units.

86. Footlick achieved the milestones and the Incentive Units vested.

87. In connection with the 2020 restructuring, Footlick became Topstep's COO.

88. In or around September 2021, Topstep pushed Footlick out of her role while she was pregnant.

89. On September 3, 2021, Footlick executed a Separation Agreement and General Release, but expressly reserved all rights and claims she may have against:

> Topstep LLC as a member of Company arising under: that certain Amended and Restated Limited Liability Company Agreement dated as of January 1, 2020; TopstepTrader LLC Amended and Restated Equity Incentive Plan dated October 1, 2016; TopstepTrader LLC Incentive Unit Award Agreement, dated November 26, 2019; Acknowledgement, dated January 1, 2020; and TopstepTrader, LLC Incentive Unit Award Agreement, dated November 1, 2014.

90. On November 12, 2021, Topstep sent Footlick a Notice of Forfeiture of Unvested Class B Units and Repurchase of Vested Class B Units.

91. In the Notice and Repurchase documents, Topstep's Manager determined the fair market value of the company at less than one-third of revenue for a partial year, January 1, 2021 through October 31, 2021.

92. Rather than a revenue multiple valuation, like what was provided to a male employee in 2018 and Topstep's illustration to clarify the value of Incentive Units, Topstep purportedly applied an EBITDA multiple.

93.     In addition, Topstep directed that it would deliver a promissory note for the purchase price at closing.

94.     The proposed promissory note was not secure and was subordinate to all other debt.

95.     The purported payments would be made on the anniversary of the closing and following three years.

96.     Footlick, through counsel, objected to the redemption and requested to review Topstep's books and records to understand the valuation, but Topstep refused to provide relevant information.

97.     Footlick requested a valuation by an agreed upon independent third-party; Topstep refused.

98.     Footlick did not execute the Notice of Forfeiture of Unvested Class B Units and Repurchase of Vested Class B Units.

**B.     Erin Clark**

99.     From approximately November 2012 through 2015, Clark served as an Executive Assistant at TopstepTrader.

100.    From approximately 2015 to September 2018, Clark served as Customer Support Manager of TopstepTrader.

101.    From September 2018 through July 2, 2021, Clark served as the People and Culture Manager for TopstepTrader and Topstep.

102.    As Executive Assistant, Clark's responsibilities included, customer support, IT, HR, and office management, *e.g.*, she oversaw and directed two office moves.

103.    As Customer Support Manager, Clark recruited, interviewed, hired, and trained talent. She created and implemented policies and strategic operational tools and protocols. For

example, she implemented credit card processing, the payment gateway, a new phone system, and customer support ticketing software.

104.    As People and Culture Manager, Clark retained her responsibilities for recruiting, interviewing, hiring, onboarding, and training. She also took charge of the diversity and inclusion initiative as well as philanthropy and volunteering opportunities.

105.    On May 15, 2017, Clark entered into an Incentive Agreement with Topstep whereby she was awarded 281,222 Class B shares.

106.    On or around July 2, 2021, Topstep laid off Clark after nine years of service.

107.    On November 12, 2021, Topstep sent Clark a Notice of Forfeiture of Unvested Class B Units, Repurchase of Vested Class B Units, and a Subordinated Promissory Note. Topstep purportedly elected to purchase her 281,222 vested units.

108.    Topstep's Manager claimed the fair market value of the remaining vested shares at $26,115, and elected to purchase them at that price.

109.    In addition, Topstep directed that it would deliver a promissory note for the purchase price at closing.

110.    The proposed promissory note was not secure and was subordinate to all other debts.

111.    The purported payments would be made on the anniversary of the closing and the following three years.

112.    Clark, through counsel, objected to the redemption and requested to review Topstep's books and records to understand the valuation, but Topstep refused to provide relevant information.

113.    Clark requested a valuation by an agreed upon independent third-party and Topstep refused.

114. Clark did not execute the Forfeiture of Unvested Class B Units and Repurchase of Class B Units.

**D.     Toby Adamson**

115. Adamson was employed as Topstep's Vice President of Product from September 24, 2019 to May 25, 2022.

116. As the Vice President of Product, Adamson spearheaded efforts to create and manage product strategy, provided a roadmap of Topstep's portfolio of products, created strategies to develop growth into other markets, and managed the team that defined the requirements for produce enhancements.

117. Adamson's offer letter provides that "A total of one percent (1%) equity will be paid over a four (4) year period, at 0.25% (one-fourth of a percent) per year, beginning one year from your start date, and on the same date for the following three years."

118. Adamson received the Incentive Unit example and description which advised that Incentive Units could be seen as annual contribution to total compensation, such that Adamson was earning her first 0.25% Interest from her start date in 2019.

119. The Incentive Unit example and description also advised that "a change in control accelerates the vesting schedule of incentive units."

120. Adamson's onboarding materials imposed a profit hurdle of $16 million, indeed, men offered incentive awards, with delayed vesting schedules, in 2019 were given the 2019 agreement, including the lower profit hurdle.

121. On November 2, 2020, Adamson entered into an Incentive Agreement with Topstep for her 300,630 Class B units.

122. Adamson's profit hurdle was then set at $28 million, a 43% increase from the 2019

profit hurdle.

123.  In November 2021, Adamson also led Topstep's technical team, assisting in product engineering.

124.  On around May 25, 2022, Adamson separated from Topstep.

125.  On July 7, 2022, Topstep sent Adamson a Notice of Forfeiture of Unvested Class B Units and Repurchase of Vested Units. Therein, Topstep purportedly elected to purchase her 150,315 vested units and alleged that the remainder of her 150,315 units were unvested and forfeited.

126.  Topstep's Manager determined the fair market value of the vested units to be $0.

127.  Topstep indicated it was willing to buy the vested units at a price of $1.

128.  Adamson objected to the redemption and requested to review Topstep's books and records to understand the valuation, but Topstep refused to provide relevant information.

129.  Adamson did not execute the Notice of Forfeiture of Unvested Class B Units and Repurchase of Vested Class B Units.

**E.    Jay Rudman**

130.  Rudman joined TopstepTrader in 2016 as a *pro bono* mentor.

131.  Rudman then served as TopstepTrader and Topstep's Chief Growth Officer and ultimately Chief Executive Officer ("CEO") from approximately 2017 through January 31, 2022.

132.  As CEO, Rudman grew Topstep's revenue 5-6 times in five years and maintained double-digit EBITDA, without taking in any investment dollars.

133.  On March 1, 2017, Rudman entered into an Incentive Unit Award Agreement with TopstepTrader, whereby he was awarded 1,105,312 Class B units.

134.  On March 16, 2018, Rudman entered into a Second Incentive Unit Award

Agreement with TopstepTrader, whereby he was awarded 1,151,007 Class B units.

135. On August 22, 2019, Rudman entered into a Third Incentive Unit Award Agreement with TopstepTrader, whereby he was awarded 1,190,297 Class B units.

136. On January 8, 2021, Rudman entered into a Fourth Incentive Unit Award Agreement with Topstep, whereby he was awarded 1,237,122 Class B units.

137. In 2021, Rudman was a finalist for 1871's "Outstanding Tech CEO Award."

138. Rudman's employment with Topstep ended on January 31, 2022.

139. On July 14, 2022, Topstep sent Rudman a Notice of Repurchase of Vested Class B Units.

140. The Notice of Repurchase of Class B Units provided that 1,237,122 Class B units awarded under the Fourth Incentive Unit Award Agreement were unvested and forfeited without payment.

141. Topstep provided that its Manager valued the 2,256,319 vested units awarded under the First and Second Incentive Unit Award Agreements at $146,895.00.

142. Topstep provided that its Manager valued the 1,190,297 vested units under the Third Incentive Unit Award Agreement at $0, but would purchase the same for $1.

143. Rudman objected to the redemption and requested to review Topstep's books and records to understand the valuations, but Topstep refused to provide relevant information.

144. Rudman did not execute the Notice of Repurchase of Class B Units.

**F.    Griffin Caprio**

145. Caprio served as an Advisory Board Member to TopstepTrader and Topstep from approximately December 2015 through February 2022.

146. Caprio used his experience in technology, product, and marketing to advise and

scale Topstep.

147. On May 28, 2017, Caprio entered into an Incentive Unit Award Agreement with TopstepTrader, whereby he was awarded 133,231 Class B units.

148. On October 1, 2017, Caprio entered into a second Incentive Unit Award Agreement with TopstepTrader, whereby he was awarded 139,559 Class B units.

149. On July 14, 2022 Topstep sent Caprio a Notice of Repurchase of Vested Class B Units.

150. The Notice of Repurchase of Class B units provided that Topstep's Manager valued Caprio's 272,790 vested units at $18,788.00 and chose to purchase the units at that price via lump-sum cash payment.

151. Caprio objected to the redemption and requested to review Topstep's books and records to understand the valuations, but Topstep refused to provide relevant information.

152. Caprio did not execute the Notice of Repurchase of Vested Class B Units.

## COUNT I – TITLE VII
### (Footlick, Clark, & Adamson v. Topstep)

153. Footlick, Clark, and Adamson ("Title VII Plaintiffs") hereby incorporate and re-allege Paragraphs 1 through 152 as though fully set forth herein.

154. Topstep is an employer as defined under Title VII.

155. The Title VII Plaintiffs were employees of Topstep.

156. Topstep intentionally discriminated against the Title VII Plaintiffs by treating them less favorably than male employees with respect to their Incentive Units in violation of Title VII, 42 U.S.C. § 2000e-2(a).

157. Topstep acted with malice and/or reckless indifference to Title VII Plaintiffs' federally protected rights to be free from such discrimination.

158.     As a direct and proximate result of Topstep's unlawful conduct, Title VII Plaintiffs have been injured and are entitled to judgment and compensation pursuant to Title VII.

WHEREFORE, Title VII Plaintiffs respectfully request entry of judgment in their favor and against Topstep and compensatory damages, punitive damages, attorney's fees and costs, and pre-and post-judgment interest in an amount to be proven at trial, plus injunctive and other relief.

## COUNT II – EQUAL PAY ACT
### (Footlick, Clark, & Adamson v. Topstep)

159.     Plaintiffs Footlick, Clark, and Adamson ("EPA Plaintiffs") hereby incorporate and re-allege Paragraphs 1 through 152 as though fully set forth herein.

160.     Topstep is an employer as defined under the Equal Pay Act.

161.     The EPA Plaintiffs were employees of Topstep.

162.     The conditions of rights, benefits, and conditions of ownership of Class B Incentive Units were substantially the same, if not identical to EPA Plaintiffs' similarly situated male colleagues.

163.     Topstep compensated EPA Plaintiffs at a substantially lower amounts and less favorable conditions than their similarly situated male counterparts. 29 U.S.C. § 206(d).

164.     EPA Plaintiffs received lower valuations, less information, less favorable payment methods, and less favorable treatment despite the same procedure purportedly applying to all Class B Incentive Unit holders.

165.     Topstep acted with malice and/or reckless indifference to EPA Plaintiffs' federally protected right to be free from such discrimination.

166.     EPA Plaintiffs' demanded fair payment and Topstep refused.

167.     As a result of Topstep's discriminatory conduct, EPA Plaintiffs have been damaged and are entitled to compensation.

WHEREFORE, EPA Plaintiffs respectfully request entry of judgment in their favor and against Defendants and lost compensation and liquidated damages, attorney's fees and costs, and pre-and post-judgment interest in an amount to be proven at trial.

## COUNT III – ILLINOIS EQUAL PAY ACT
### (Footlick, Clark, & Adamson v. Topstep)

168.    Plaintiffs Footlick, Clark, and Adamson ("IEPA Plaintiffs") hereby incorporate and re-allege Paragraphs 1 through 152 as though fully set forth herein.

169.    Topstep is an employer as defined under the Illinois Equal Pay Act.

170.    IEPA Plaintiffs were employees of Topstep.

171.    The conditions of ownership and valuations of Class B units were substantially the same, if not identical to IEPA Plaintiffs' similarly situated male colleagues.

172.    The IEPA Plaintiffs entered into Equity Incentive Agreements and the 2020 Operating Agreement with Topstep.

173.    Under the Equity Incentive Agreements and 2020 Operating Agreement, Topstep redeemed IEPA Plaintiffs' Class B shares at a values substantially lower, pursuant to less favorable conditions, unfavorable payment methods, with less information than their similarly situated male counterparts.

174.    Topstep acted with malice and/or reckless indifference to IEPA Plaintiffs' protected right to be free from such discrimination, in violation of 820 ILCS § 112, *et. seq.*

175.    IEPA Plaintiffs demanded fair payment and Topstep refused.

176.    As a result of Topstep's discriminatory conduct, IEPA Plaintiffs have been damaged and are entitled to compensation pursuant to 820 ILCS § 112/30.

WHEREFORE, IEPA Plaintiffs respectfully request entry of judgment in their favor and against Defendants and actual damages, compensatory damages, punitive damages, civil penalties,

attorney's fees and costs, and pre-and post-judgment interest in an amount to be proven at trial, plus injunctive relief.

## COUNT IV – ILLINOIS HUMAN RIGHTS ACT
### (Footlick, Clark, & Adamson v. Topstep)

177.    Footlick, Clark, and Adamson ("IHRA Plaintiffs") hereby incorporate and re-allege Paragraphs 1 through 152 as though fully set forth herein.

178.    Topstep is an employer under the IHRA.

179.    The IHRA Plaintiffs were employees under the IHRA.

180.    As women, IHRA Plaintiffs are members of a protected class under the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101, *et. seq.*

181.    Defendants intentionally discriminated against the IHRA Plaintiffs, *e.g.*, by treating them less favorably than male employees by redeeming their Class B shares at values less than those paid to male employees, imposing payment methods that were less favorable than those offered to men, failing and refusing to obtain a third-party valuation of the Company, and imposing improper conditions and calculations in the Incentive Units.

182.    As a direct and proximate result of Defendants' unlawful conduct, IHRA Plaintiffs have been injured and are entitled to judgment and compensation pursuant to the IHRA.

WHEREFORE, IHRA Plaintiffs respectfully request entry of judgment in their favor and against Defendants and actual damages, punitive damages, preliminary and permanent injunction, attorney's fees and costs, pre and post-judgment interest, and civil penalties, in an amount to be proven at trial.

## COUNT V – BREACH OF CONTRACT[1]

**(Footlick, Clark, Adamson, Rudman, and Caprio v. Topstep, Topstep Holdings, & Patak Holdings)**
*2020 Operating Agreement*

183.    Plaintiffs hereby incorporate and re-allege Paragraphs 1 through 152 as though fully set forth herein.

184.    Plaintiffs each entered into the 2020 Operating Agreement with Topstep, Topstep Holdings, and Patak Holdings.

185.    Plaintiffs performed their obligations under the 2020 Operating Agreement.

186.    Pursuant to the 2020 Operating Agreement, Topstep, Topstep Holdings, and Patak Holdings breached the Agreement in several ways, including but not limited to:

   a.   Forcing a redemption of Plaintiffs' Class B shares for values not equal to their fair market value;

   b.   Providing more than Five-Million Dollars in distributions to Patak, while undervaluing Topstep and the Plaintiffs' Class B shares;

   c.   Failing to secure proper authority for distributions to Patak;

   d.   Following Plaintiffs' proper demand, failing to allow Plaintiffs to inspect Topstep's books and records

   e.   Failure to provide Plaintiffs a cap table in their various records requests;

   f.   Providing an unreasonable one week closing for Class B units;

   g.   Failing to issue appropriate tax documentation and distributions.

187.    As a direct and proximate result of Topstep's, Topstep Holdings', and Patak Holdings' breaches, Plaintiffs have sustained monetary damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs respectfully request entry of judgment in their favor and against

---

[1] Count V of Plaintiffs' First Amended Complaint was brought against all Defendants. On March 26, 2024, that claim was dismissed with leave to replead as to Defendants TopstepTrader, TopstepPeople, and Michael Patak. Dkt. 051. Plaintiffs reserve all rights.

Defendants and an award of damages and interest in an amount to be proven at trial.

**COUNT VI – BREACH OF CONTRACT[2]**
**(Footlick, Clark, Adamson, Rudman, and Caprio v. Topstep & TopstepTrader)**
***Incentive Unit Award Agreements***

188.     Plaintiffs hereby incorporate and re-allege Paragraphs 1 through 152 as though fully set forth herein.

189.     Plaintiffs each entered into Incentive Unit Award Agreements with Topstep and TopstepTrader.

190.     Plaintiffs performed their obligations under the Incentive Award Agreements.

191.     Topstep and TopstepTrader breached the Incentive Unit Award Agreements in several ways, including but not limited to, redeeming Plaintiffs' Incentive Shares for value not equal to their fair market value, and denying that certain units vested upon the change of control in 2020.

192.     As a direct and proximate result of Topstep's and TopstepTrader's breaches, Plaintiffs have sustained monetary damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs respectfully request for entry of judgment in their favor and against Topstep and TopstepTrader and award damages in an amount to be proven at trial, attorney's fees, and costs.

---

[2] Count VI of Plaintiffs' First Amended Complaint was brought against all Defendants. On March 26, 2024, that claim was dismissed with leave to replead as to Defendants Topstep Holdings, TopstepPeople, Patak Holdings, and Michael Patak. Dkt. 051. Plaintiffs reserve all rights.

## COUNT VII – BREACH OF FIDUCIARY DUTY[3]
### (Footlick, Clark, Adamson, Rudman, and Caprio v. Patak Holdings and Patak)

193.    Plaintiffs hereby incorporate and re-allege Paragraphs 1 through 152 as though fully set forth herein.

194.    Under the 2016 Operating Agreement, Patak, as an officer of Topstep and its sole Class A member, owed Plaintiffs a duty of loyalty, good faith, and candor.

195.    Under the Illinois Limited Liability Company Act, 805 ILCS § 180/15, *et seq.*, Patak, as an officer of Topstep and its sole Class A member, owed Plaintiffs a duty of loyalty, good faith, and candor.

196.    Under the 2016 Operating Agreement, Patak Holdings, as the Manager of Topstep, owed Plaintiffs a duties of loyalty, good faith, and candor.

197.    Patak and Patak Holdings breached their fiduciary duties in multiple ways, including but not limited to:

    a.  Negligently misrepresenting the changes implemented in the 2020 Operating Agreement;

    b.  Stripping fiduciary duties from the 2020 Operating Agreement;

    c.  Eliminating the right to independent appraisal of Class B units;

    d.  Implementing a provision in the 2020 Operating Agreement that terminated employees and employees withdrawing from Topstep without "good reason" may have their vested Class B shares redeemed by Topstep at a price of $1;

    e.  Taking more than Two-Million Dollars in undisclosed distributions;

    f.  Inaccurately claiming the profits interest hurdle applies to redemptions;

---

[3] Count VII of Plaintiffs' First Amended Complaint was brought against all Defendants. On March 26, 2024, that claim was dismissed with leave to replead as to Defendants Topstep Holdings and Patak Holdings relating to allegations arising out of the 2020 Operating Agreement. Dkt. 051. Plaintiffs reserve all rights.

g. Without members' knowledge or consent, diverting membership distributions to fund Patak's company, Bluechxp, LLC;

h. Placing all ownership of Incentive Shares in the holding entity, shifting additional debt and liabilities to the holders, which lowered the value of their shares;

i. Amending the Operating Agreement and changing Management Control without notice, consent, or disclosure to all Members;

j. Upon information and belief, adding Patak's non-employee family members to Topstep's payroll so they may receive improper payments and insurance benefits.

198. As a direct and proximate result of Patak's and Patak Holdings' breach of fiduciary duties, Plaintiffs have sustained damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs respectfully request for entry of judgment in their favor and against Patak and Patak Holdings in an amount to be proven at trial, including punitive damages.

## COUNT VIII – ALTER EGO - PIERCING THE CORPORATE VEIL[4]
### (Footlick, Clark, Adamson, Rudman, and Caprio v. Defendants)

199. Plaintiffs hereby incorporate and re-allege Paragraphs 1 through 152 as though fully set forth herein.

200. Topstep and its affiliate entities under Patak's control were merely an alter ego, instrumentality, conduit, or adjunct of Patak.

201. Patak ignored the corporate form in several ways, including but not limited to:

a. Commingling the assets and affairs of Topstep, Patak Holdings, and Topstep Holdings;

b. Misappropriating Topstep funds for his own personal use/gain;

c. Without members' knowledge or consent, diverting membership distributions to fund Bluechxp, LLC;

---

[4] Count VIII was dismissed with leave to replead on March 26, 2024. Dkt. 051. Plaintiffs reserve all rights.

     d.     As the sole Class A shareholder of Topstep, knowingly making misrepresentations regarding the effect of the 2020 Operating Agreement on the valuation of the Class B shares;

     e.     Upon information and belief, adding his non-employee family members to Topstep payroll so they may receive improper payments and insurance benefits.

WHEREFORE, Plaintiffs respectfully request for entry of judgment in their favor and against Defendants in an amount to be proven at trial, and an Order declaring Topstep and its affiliate entities alter egos of Patak.

### COUNT IX – NEGLIGENT MISREPRESENTATION[5]
### (Footlick, Clark, Adamson, Rudman, and Caprio v. Topstep, Topstep Holdings, TopstepTrader, Patak Holdings, Patak)

202.    Plaintiffs hereby incorporate and re-allege Paragraphs 1 through 152 as though fully set forth herein.

203.    At all relevant times, Topstep, Topstep Holdings, TopstepTrader, Patak Holdings, and Patak owed fiduciary duties to Plaintiffs, including the duty of good faith and fair dealing.

204.    Topstep's March 30, 2020, email regarding company restructuring, providing that no changes would be implemented adverse to Class B members' interest, *i.e.,* "business as usual," constituted false statements of material fact.

205.    Defendants acted carelessly, negligently, and with disregard for the truth in making their false statements in the March 30, 2020 email to Plaintiffs.

206.    By making their false statements in their March 30, 2020 email to Plaintiffs, Defendants intended to fraudulently induce Plaintiffs to sign the 2020 Operating Agreement.

207.    In reliance on Defendants' false and fraudulent statements, Plaintiffs did execute

---

[5] Count IX was dismissed with leave to replead on March 26, 2024. Dkt. 051. Plaintiffs reserve all rights.

the 2020 Operating Agreement, to their detriment.

208.    As a result of Plaintiffs' reliance on Defendants' false and fraudulent statements, Plaintiffs suffered monetary damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs respectfully request for entry of judgment in their favor and against Defendants and an award of actual damages, punitive damages, attorney's fees and costs, and interest in an amount to be proven at trial.

## COUNT X – COMMON LAW FRAUD[6]
### (Footlick, Clark, Adamson, Rudman, and Caprio v. Defendants)

209.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 152 as though fully set forth herein.

210.    Defendants' March 30, 2020, email regarding company restructuring, providing that no changes would be implemented adverse to Class B members' interest was a false statement of material fact.

211.    Defendants knew that the false and fraudulent statements did not accurately reflect the changes implemented in the 2020 Operating Agreement effecting the Class B members' rights under the agreement.

212.    By making their false statements in their March 30, 2020 email to Plaintiffs, Defendants intended to fraudulently induce Plaintiffs to sign the 2020 Operating Agreement.

213.    In reliance on Defendants' false and fraudulent statements, Plaintiffs did execute the 2020 Operating Agreement, to their detriment.

214.    As a result of Plaintiffs' reliance on Defendants' false and fraudulent statements, Plaintiffs suffered monetary damages in an amount to be proven at trial.

---

[6] Count X was dismissed with leave to replead on March 26, 2024.  Dkt. 051.  Plaintiffs reserve all rights.

WHEREFORE, Plaintiffs respectfully request for entry of judgment in their favor and against Defendants and an award of actual damages, punitive damages, attorney's fees and costs, and interest in an amount to be proven at trial.

### COUNT XI – ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505, *et. seq.*)[7]
### (Footlick, Clark, Adamson Rudman, and Caprio v. Defendants)

215.    Plaintiffs hereby incorporate and re-allege Paragraphs 1 through 152 as though fully set forth herein.

216.    Defendants engaged in deceptive actions in various ways, including but not limited to, inducing Plaintiffs to sign the 2020 Operating Agreement by virtue of their false and misleading March 30, 2020 email, and fraudulently valuing the Class B shares to redeem the units for the lowest price possible.

217.    Defendants' deceptive actions were made in the course of trade or commerce, with the intention of making profit.

218.    Defendants intended to induce Plaintiffs to rely upon their deceptive actions and Plaintiffs did so rely upon the same in signing the 2020 Operating Agreement.

219.    Defendants' deceptive actions proximately caused injury and monetary damages to Plaintiffs in in an amount to be proven at trial.

WHEREFORE, Plaintiffs respectfully request for entry of judgment in their favor and against Defendants and an award of actual damages, punitive damages, attorney's fees and costs, and interest in an amount to be proven at trial.

---

[7] Count XI was dismissed with leave to replead on March 26, 2024.  Dkt. 051.  Plaintiffs reserve all rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court Order the following relief from Defendants jointly and/or severally:

a.  Entry of judgment in their favor for compensatory, incidental, consequential, and punitive damages, lost profits, interest, attorneys' fees, and costs.

b.  Pursuant to the Declaratory Judgment Act, an Order declaring the forced redemptions invalid and ineffective as they were not signed by the Manager, Patak Holdings, Inc. 28 U.S.C. § 2201(a).

c.  Entry of an Order compelling Patak Holdings to allow Plaintiffs to inspect Topstep's financial books and records dating from its inception through present.

d.  Pre and post-judgment interest.

e.  For such other relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all claims so triable.

Dated: May 14, 2024                    Respectfully Submitted,

                                       By:*/s/ Gillian G. Lindsay*
                                       **Attorney for Melissa Footlick, Erin Clark,
                                       Toby Adamson, Jay Rudman, and Griffin
                                       Caprio**

Ian H. Fisher (ARDC #6224920)
Gillian G. Lindsay (ARDC #6298511)
Michael A. Mayerck (ARDC #6333038)
IFisher@taftlaw.com
GLindsay@taftlaw.com
MMayerck@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Dr., Suite 2600
Chicago, IL  60601
Telephone:     (312) 527-4000
Facsimile:     (312) 527-4011